UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES L. COOPER | CIVIL ACTION |
| VERSUS | NO. 20-1454 |
| CORNERSTONE CHEMICAL COMPANY | SECTION "R" (5) |

## ORDER AND REASONS

Before the Court is plaintiff James Cooper's motion for reconsideration under Federal Rule of Civil Procedure 59(e), of the Court's Order and Reasons granting summary judgment in favor of defendant Cornerstone Chemical Company ("Cornerstone").[1]  Cornerstone opposes the motion.[2] For the following reasons, the Court denies the motion.

## I. BACKGROUND

This case arises from the termination of a crane operator. Plaintiff, James Cooper, was employed with defendant Cornerstone and its predecessors from April 1, 1991 until his termination on February 3, 2020.[3]

---

[1] R. Doc. 71.
[2] R. Doc. 72.
[3] R. Doc. 1 ¶ 18.

During his employment with Cornerstone, Cooper was a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Services Workers International Union, on behalf of its Local USW 13-447 ("Local USW 13-447").[4] As part of his membership, plaintiff was covered by a collective bargaining agreement ("CBA") that was negotiated between Local USW 13-447 and Cornerstone.[5] The CBA provides members with a process for presenting grievances, including for wrongful termination.[6] At the time of his termination, Cooper was under a "last chance agreement" ("LCA"), which required Cooper to abide by all of Cornerstone's "policies, procedures, and work standards at all times," and stated that if Cooper failed to do so, his violation would result in the termination of his employment with Cornerstone.[7] The LCA also required plaintiff to waive his right to grieve any such finding of a violation.[8]

On May 14, 2020, plaintiff filed a complaint in this Court alleging that Cornerstone violated the Louisiana Employment Discrimination Law ("LEDL"), La. Stat. Ann. §§ 23:301-314, when it fired plaintiff because of his

---

[4] R. Doc. 23 ¶ 9.
[5] *Id.*
[6] R. Doc. 33-3 at 153-55, 175 (CBA).
[7] *Id.* at 225 (LCA).
[8] *Id.*

2

age.[9] Cooper asserts that defendant's purported reason for his termination—that he violated the company's safety policy and his LCA—was false and a pretext for age discrimination.[10] Plaintiff also brought a claim under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging that Cornerstone terminated him without just cause in violation of its collective bargaining agreement ("CBA") with Local USW 13-447.[11] He further alleges that Local USW 13-447 refused to process plaintiff's grievance against Cornerstone regarding his unlawful termination, and that this refusal was arbitrary and in bad faith.[12] On March 29, 2021, plaintiff filed an amended complaint reasserting his previous claims, and adding a claim for age-based discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA").[13]

On November 30, 2021, defendant moved for summary judgment on all three of plaintiff's claims.[14] The Court granted Cornerstone's motion, finding that plaintiff had failed to produce sufficient evidence to show that Cornerstone's legitimate, non-discriminatory reason for his termination was

---

9   R. Doc. 1 ¶ 104.
10  *Id.* ¶ 60.
11  *Id.* ¶¶ 94-100.
12  *Id.*
13  R. Doc. 23.
14  R. Doc. 33.

*Matter of Life Partner Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). Courts have held that the moving party must show that the motion is necessary based on at least one of the following criteria: (1) "correct[ing] manifest errors of law or fact upon which the judgment is based;" (2) "present[ing] newly discovered or previously unavailable evidence;" (3) "prevent[ing] manifest injustice;" and (4) accommodating "an intervening change in the controlling law." *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Mar. 19, 1998).

## III.  DISCUSSION

Here, plaintiff asserts that reconsideration is necessary (1) to correct a manifest error of law, (2) because of newly discovered evidence, and (3) because genuine issues of fact remain as to whether Cooper/Cornerstone breached the LCA and whether Cooper was fired because of his age.[18] The Court addresses each argument in turn.

---

[18]    R. Doc. 71-1.

### A.  Manifest Legal Error

Plaintiff contends that this Court made a manifest legal error in granting summary judgment on his section 301 claim.[19] Plaintiff specifically takes issue with this Court's holding that because plaintiff had not demonstrated that his union breached its duty of fair representation, which is an essential element of plaintiff's section 301 claim, defendant was entitled to summary judgment on plaintiff's LMRA breach-of-contract and breach-of-duty-of-fair-representation claims.[20] Plaintiff does not contest the Court's finding that he failed to produce evidence that the union breached its duty of fair representation, but instead asserts that the Court's holding "conflicts with" United States Supreme Court and Fifth Circuit precedents that permit an employee to sue his employer for breach of contract under section 301 of the LMRA "without the need to show that the union breached its duty of fair representation."[21] But plaintiff's motion fails to cite a single Fifth Circuit or Supreme Court case holding that an employee bringing a section 301 claim

---

[19]  R. Doc. 71-1 at 2-4.
[20]  R. Doc. 69 at 27-32.
[21]  R. Doc. 71-1 at 2.

6

is not required to show that both the employer violated the CBA, and that the union breached its duty.

To the contrary, as cited in this Court's Order and Reasons granting summary judgment, it is well established by both Fifth Circuit and Supreme Court precedent that a plaintiff bringing a hybrid breach-of-contract and fair-representation claim under section 301 "must prove *both* that the employer violated the CBA *and* that the union breached its duty." *Jaubert v. Ohmstede, Ltd.*, 574 F. App'x 498, 501 (5th Cir. 2014) (per curiam) (citing *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164-65 (1983)) (second emphasis added). Further, the Fifth Circuit has held that in cases when a union did not breach its duty, the Court "need not consider whether [the employer] breached the CBA." *Id.* This is exactly what this Court held in granting defendant's motion for summary judgment on plaintiff's section 301 claim. And the non-precedential case cited by Cooper—*DeGrandis v. Children's Hospital of Boston*, 806 F.3d 13 (1st Cir. 2015)—does not hold otherwise. In *DeGrandis*, the court overturned the dismissal of a plaintiff's section 301 claim, holding that there was no procedural bar to plaintiff's claim based on lack of exhaustion, given that the LCA in that case "rend[ered] the exhaustion and finality rules inapplicable." *Id.* at 18-19. Nowhere in *DeGrandis* did the court hold that plaintiff could maintain a section 301

7

claim without showing that the union breached its duty of fair representation.

Here, unlike in *DeGrandis*, this Court dismissed plaintiff's claim not for lack of exhaustion, but instead because he failed to produce any evidence that would establish an essential element of his section 301 claim. Accordingly, the Court finds that plaintiff has not demonstrated a manifest error of law related to the Court's dismissal of his LMRA breach-of-contract and breach-of-duty-of-fair-representation claims.

### B. New Evidence

Plaintiff next argues that the deposition testimony of Mark Shields is "new evidence" that provides a basis for this Court to reconsider its judgment.[22] Shields was a maintenance mechanic at Roehm America and worked with plaintiff on the condenser job on January 27, 2020.[23] Plaintiff asserts that Shields's testimony is "newly discovered evidence" because his deposition was not taken until December 22, 2021, which was after plaintiff's deadline to file his opposition to Cornerstone's motion for summary judgment.[24]

---

[22] R. Doc. 71-1 at 9-10.
[23] R. Doc. 52-2 ¶¶ 3-7 (Shields Declaration).
[24] R. Doc. 71-1 at 9-10.

8

A motion to reconsider based on an alleged discovery of new evidence should be granted only if: "(1) the facts discovered are of such nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 534 (5th Cir. 2015) (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 677 (5th Cir. 2010)). Here, plaintiff cannot show that Shields's deposition is "actually newly discovered," or that it would change the outcome of the case.

First, Shields's deposition testimony is not "new evidence." The Court issued its Order and Reasons on January 3, 2022.[25] Shields's deposition was taken on December 22, 2021, almost two weeks before this Court issued its order. Plaintiff fails to explain how Shields's deposition testimony, which was available at the time that defendant's motion for summary judgment was under consideration, amounts to "newly discovered" or "previously unavailable evidence." *See Mercato Elisio, LLC v. Deveney*, No. 15-563, 2017 WL 615346, at *1 (E.D. La. Feb. 15, 2017) (stating that evidence obtained after defendants' summary-judgment motion was submitted but before the Court entered its judgment is not considered "new evidence" for purposes of

---

25     R. Doc. 69.

9

Rule 59(e)). Plaintiff's failure to explain "why the evidence was not available prior to the [Court's] grant of summary judgment constitutes a valid basis for denying [a] Motion for Reconsideration." *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 (5th Cir. 1999); *see also Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991) (holding that "the unexcused failure to present evidence [that] is available at the time summary judgment is under consideration constitutes a valid basis for denying a motion to reconsider").

Second, even if Shields's testimony were considered "new evidence," it would not disturb this Court's reasons for granting summary judgment. Shields's deposition testimony attached to plaintiff's motion to reconsider walks through and confirms the information in the declaration that Shields previously provided, and that the Court previously considered in ruling on defendant's motion for summary judgment.[26] The Court already rejected plaintiff's argument that Shields's declaration creates an issue of fact as to whether Cooper committed any safety violations during his operation of the crane on January 27, 2020.[27] And there is nothing in Shields's deposition

---

[26] *See, e.g.*, R. Doc. 71-2 at 8 (Shields Deposition at 37:3-24) ("Paragraph fourteen . . . . Is that information true and accurate based on your memory?").

[27] R. Doc. 69 at 22-23.

10

testimony that would alter that finding. Moreover, as noted by defendant, Shields testified that he did not know whether Cooper left the crane's engine running on the day in question, and thus his testimony does not undermine defendant's legitimate, non-discriminatory reason for terminating plaintiff.[28] In sum, Shields's testimony does not provide a basis for reconsideration, as it is not "new evidence," and does not undermine the reasons for the dismissal of plaintiff's claims.

### C. Genuine Disputes of Material Fact

Finally, plaintiff argues that genuine issues of fact remain as to whether he or Cornerstone breached the LCA, and relatedly, whether Cooper was terminated unlawfully because of his age.[29] Both of these arguments hinge on whether Cooper committed a safety violation and thus whether that safety violation was a legitimate, non-discriminatory reason for his termination. The Court previously held that plaintiff admittedly left the engine running on an unattended crane in violation of Cornerstone's safety policy. The Court further held that plaintiff offered no reason why defendant's decision to

---

[28] R. Doc. 72 at 5.
[29] R. Doc. 71-1 at 4-11.

11

terminate him for this undisputed violation was pretextual, or a violation of plaintiff's LCA.[30]

Plaintiff again raises the same arguments that he previously made in his opposition, mainly that his actions on January 27, 2020 did not constitute an unsafe operation of the crane.[31] The Court has already considered plaintiff's arguments concerning whether he left a suspended load unattended, and thus declines to rehear those same meritless arguments now. Notably, none of plaintiff's reasserted arguments about the issue of the suspended load change this Court's holding that Cornerstone provided a legitimate, non-discriminatory reason for plaintiff's termination that has nothing to do with the allegation that he left a suspended load unattended. The only new argument in plaintiff's reconsideration motion is that it is not an unsafe act to leave a crane's engine running for short absences.[32] Plaintiff did not previously address defendant's assertion that he was terminated because he violated Cornerstone's policy by leaving the engine running.[33] Plaintiff cannot use a Rule 59(e) motion to counter Cooper's rationale for the first time, given that plaintiff's and Thadeus

---

30    R. Doc. 69 at 19-22.
31    *Id.* at 71-1 at 6.
32    *Id.* at 8-9.
33    R. Doc. 69 at 21.

12

Dantin's testimony that employees left crane engines running regularly without discipline was information available to plaintiff before the Court entered its judgment. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (stating that a motion to reconsider "cannot be used to raise arguments which could, and should have been made before the judgment issued" (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990))).

Even if plaintiff could rely on the testimony that leaving a crane engine running for short periods of time was a common and safe act, such an argument is still insufficient to create a genuine issue of material fact. Although Cooper testified that it was "not uncommon" for crane operators to leave an unattended crane's engine running for hours,[34] he admits that he was "responsible for complying" with defendant's safety policies, including FCP-1006, which expressly prohibited crane operators from leaving the crane's engine running while the crane was unattended.[35] And it is undisputed that under the terms of his LCA, Cooper's violation of *any* of defendant's "policies, procedures, and work standards . . . no matter the severity" would result in his termination with Cornerstone.[36] Further,

---

[34] R. Doc. 33-3 at 102 (Cooper Deposition at 214:6-21).
[35] *Id.* at 69 (Cooper Deposition at 121:7-22).
[36] R. Doc. 33-3 at 225 (LCA).

13

plaintiff has still failed to "produce evidence demonstrating that [Cornerstone] did not in good faith believe" that he left the crane engine running in violation of its safety policy, but instead "relied on [that justification] in a bad faith pretext to discriminate against him." *See Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993).

Accordingly, the Court finds that plaintiff has not raised any manifest errors of fact, and instead merely presents the arguments that he already raised or should have raised before the Court granted defendant's motion for summary judgment. Plaintiff's motion for reconsideration is denied.

## IV. CONCLUSION

For the foregoing reasons, James Cooper's motion for reconsideration is DENIED.

New Orleans, Louisiana, this 25th day of April, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE